UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

-------------------------------------------------
In re:

In re: Early Years Academy, Inc.                Bankruptcy No. 24-41601
                                                Chapter 11

            Debtor.
-------------------------------------------------

# SECOND MODIFIED PLAN OF REORGANIZATION

## OF

## EARLY YEARS ACADEMY, INC.

December 23, 2024

Kenneth C. Edstrom (148696)
Alexander J. Beeby (398286)
Karl J. Johnson (0391211)
Sapientia Law Group
120 South Sixth Street, Suite 100
Minneapolis, MN  55402
612-756-7100
kene@sapientialaw.com
alexb@sapientialaw.com
karlj@sapientialaw.com

Attorneys for Debtors

TABLE OF CONTENTS

ARTICLE I. INTRODUCTION ................................................................................................. 1

ARTICLE II. DEFINITIONS ..................................................................................................... 1

ARTICLE III. ESTIMATED CLAIMS, VALUES, AMOUNTS AND OBJECTIONS 3

ARTICLE IV. UNCLASSIFIED CLAIMS................................................................................. 3

ARTICLE V. CLASSIFIED CLAIMS ....................................................................................... 5

    A.    Class 1:  Secured Claim of the United States Small Business Administration (Unimpaired). ........................................................................................................................ 5

    B.    Class 2: General Unsecured Claims (Impaired). ............................................... 5

    A.    Class 2A: Unsecured Claims of NE Entrepreneur Fund and Choice Financial Group (Unimpaired). .................................................................................................... 6

    B.    Class 3. Equity Holders (Unimpaired) ............................................................ 7

ARTICLE VI. IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN ................................................................................................................ 7

ARTICLE VII. GENERAL PROVISIONS................................................................................. 7

ARTICLE VIII. MEANS OF EXECUTION OF PLAN AND FEASIBILITY.............. 9

    A.    Plan Implementation. ................................................................................... 9

    B.    Feasibility ................................................................................................. 10

ARTICLE IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND ADMINISTRATIVE CLAIMS ...................................................................................... 10

ARTICLE X. MODIFICATION OF THE PLAN ........................................................ 11

ARTICLE XI. CONTINUING JURISDICTION OF THE BANKRUPTCY COURT 11

ARTICLE XII. RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS ............... 11

ARTICLE XIII. DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION .. 11

ARTICLE XV. MISCELLANEOUS PROVISIONS ................................................. 13

EXHIBIT A ................................................................................................................. 15

## ARTICLE I. INTRODUCTION

Early Years Academy, Inc. ("EYA" or "Debtor") filed for Subchapter V Small Business Reorganization on June 20, 2024 ("Petition Date") and has since operated as a debtor in possession under the laws of the United States Bankruptcy Code.

Based on the forgoing, the Debtor hereby proposes the following plan of reorganization (the "Plan" or "Plan of Reorganization") pursuant to United States Bankruptcy Code, Title 11 of the United States Code including provisions for a Subchapter V small business reorganization.

Early Years Academy, Inc., ("Debtor") is a child care center licensed by the state of Minnesota operating in two locations, Cambridge and Pine City. Debtor provides educational daycare programs for infants, toddlers, preschool and school-age children with experienced and nurturing care providers. Debtor was established in 2015 by Amy Miesner who has always been the sole owner and officer of the Debtor. EYA has grown to employ 29 persons and provide services for 66 children. Despite suffering significant losses during the Covid pandemic, Debtor is slowly recovering and is making income enough to cover its ongoing expenses. There has seen a steady increase in its business in 2024 and Debtor expects that trend to continue.

The financial issues suffered by the Debtor are primarily COVID related. Specifically, during Covid, in order to expand to a second location, Debtor took out a loan from On-Deck Capital, Inc. in the amount of $75,000. Shortly after that location opened, COVID hit and the Debtor's business was devastated, making repayment of the On Deck loan impossible. Debtor made several attempts to negotiate their debt with On Deck, but no agreement could be made. Eventually On Deck obtained a judgment against Debtor in the state of Virginia which judgment was later docketed in Minnesota. On June 12, 2024, On Deck sent a garnishment request to Choice Bank. The bank held $70,000 for the garnishment starting on June 18. This represented the majority of the Debtor's cash. Although the Debtor was current on all of its obligations, in order to make payroll, the garnishment by On Deck forced the Debtor to seek an emergency reorganization filing under Chapter 11 of the United States Bankruptcy Code. Other than a $500,000 EIDL debt owed to the Small Business Administration, the unsecured debt owed to On Deck, $60,000 owed on a corporate credit card, and a disputed debt owed to the State of Minnesota, Debtor has no other debt. Debtor believes that if allowed to reorganize, the relief from the garnishment of On Deck will allow its recovering business to reorganize, pay all of its secured creditors and pay a substantial return to its unsecured creditors.

## ARTICLE II. DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective

1

meanings hereinafter set forth. Any terms contained in this Plan that are not specifically defined shall have the meaning provided for in the Bankruptcy Code unless the context otherwise requires. To the extent any term defined herein conflicts with the definition in the Bankruptcy Code, the Bankruptcy Code definition will prevail.

"Allowed Amount", "Allowed Claim" or "Allowed Interest" means a claim or interest to the extent that:

(a) A proof of such claim or interest has been
 (i) timely filed,
 (ii) deemed filed pursuant to Bankruptcy Code § 1111(a), or
 (iii) late filed with leave of the court after notice and opportunity for hearing given to counsel for the Debtors and counsel for the committee of unsecured creditors, if any; and

(b) (i) that is not a contested claim, or
 (ii) that is allowed (and only to the extent allowed) by a final order; or

(c) A claim asserted by any professional seeking compensation in connection with this case only to the extent that the claim is allowed by order of the court after notice and hearing as provided in the Bankruptcy Code.

"Avoidance Actions" means claims made under 11 U.S.C. §§ 510, 542, 544, 545, 547, 548, 549, 550 and 553.

"Bankruptcy Court" or "Court" means this court, a unit of the United States Bankruptcy Court for the District of Minnesota, or any other court having competent jurisdiction to enter an order confirming the Plan.

"Debtor" means Early Years Academy, Inc.

"Confirmation Date" means the date of entry of an order confirming Debtor's Plan.

"Effective Date" shall mean the 15th day after the order for confirmation.

"Interest" means the equity interest of any shareholder in Debtor.

"Net Proceeds" means the total proceeds received from recoveries under any legal proceeding, including but not limited to any Avoidance Actions, less reasonable costs, expenses and attorneys' fees.

"Plan" means this Chapter 11 plan of reorganization and any amendments or

2

modifications thereto.

"Pro Rata Share" means, as to a claimant, the amount determined by multiplying the total amount of Debtor's payment to a particular class by a fraction, the numerator of which is the amount of the claimant's allowed claim and the denominator of which is the total amount of all allowed claims in that class. For example and purpose of clarity, where an approved claim is $10,000, the total claims in the Class 1 are $200,000, and the total distribution to the class is $100,000, the Pro Rata Share of that claimant would be $5,000:

($10,000/$200,000) * $100,000 = $5,000.

## ARTICLE III. ESTIMATED CLAIMS, VALUES, AMOUNTS AND OBJECTIONS

Debtor, or any party in interest, has the right to object to Claims or Interests filed within the bankruptcy proceeding within 30 days of the Confirmation Date, or such other time as the Court may direct. Unless otherwise stated below, the valuations, claim amounts or projected payouts given in this Plan of Reorganization are approximations. Debtor will examine all Claims and work to come to agreements with creditors relating to values, claim amounts and the like. If agreements cannot be reached, Debtor or any party in interest may file any objections relating to such Claims as are appropriate. Any such Claims for which an objection has been filed or with respect to which a determination of the amount or value must be made, shall be paid when, and to the extent allowed or determined by the Court, or as otherwise agreed to by Debtor and such claimant, and approved by the Court.

## ARTICLE IV. UNCLASSIFIED CLAIMS

Unclassified claims include:

1. Post-petition claims, incurred in the ordinary course of Debtor's business. [other than those listed in paragraph (3) below].

2. Allowed administrative expense claims, except as otherwise classified herein, including:

    a. Allowed fees and expenses of professionals for Debtor pursuant to 11 U.S.C. § 503(b)(1)(A);

    and

    b. Allowed administrative claims under 11 U.S.C. § 503(b)(9).

3. Administrative claims of taxing authorities for post-petition taxes. To the best of its knowledge, Debtor is current on all post-petition taxes.

## TREATMENT

The Allowed Amounts of the foregoing claims will be satisfied by payment in full on the Effective Date, unless otherwise agreed to by the particular claimant to the extent not otherwise paid in the ordinary course of business as the same become due or as agreed upon by a particular claimant. The largest of these claims is likely to be attorney's fees for Debtor's counsel, estimated at $30,000, who agrees to take payments over time as available from the cash flow of Debtor. Debtor will continue to pay all court fees and all other trustee fees, including subchapter V Trustee fees, if any, that come due until the Chapter 11 case is closed, converted or dismissed. Unpaid Subchapter V trustee fees are estimated at $5,000 or less.

4. Pre-Petition Tax Claims under 11 U.S.C. § 507(a)(8)

Debtor believes that it has no tax debt owing either the state or the federal government.

## TREATMENT OF ANY TAX CLAIMS

The principal of any Allowed Amount arising under § 507(a)(8) will, unless otherwise agreed, be paid, with interest, at the rate set forth in applicable state or federal provisions regarding interest on unpaid taxes under a plan of reorganization. Penalties will be paid as Class 2 unsecured claims. Such taxes will be payable in amounts as they become available from operations or in equal monthly payments from the earnings of Debtors not to exceed 60 months from the Petition Date.

Priority claims for pre-petition wages used §11 U.S.C. § 507(a)(4).

These claims, to the extent they exist, and are allowed, are for all wages, salary or commissions earned under § 507(a)(4) of the bankruptcy code. Debtor believes that there are no such claims.

## TREATMENT

Such claims will be paid, in full, on the Effective Date, or according to the term of any agreement with any such claimholder.

ARTICLE V. CLASSIFIED CLAIMS

    A.    Class 1: Secured Claim of the United States Small Business Administration (Unimpaired).

| Creditor | Scheduled Balance | Interest Rate | Monthly Payment | Maturity Date | Collateral/Security | UCC Filed? |
|---|---|---|---|---|---|---|
| SBA-EIDL | $500,000.00 | 3.75% | $2,500 | January 2051 | All assets | YES |

On or about January of 2021 Debtor received a $175,000 COVID-19 Economic Injury Disaster Loan ("EIDL") from the SBA. That loan was later increased to $500,000 but the maturity date remained the same. The loan in the current amount listed above or as stated in an proof of claim filed by the SBA and allowed by the Debtor was secured by an executed blanket security agreement properly perfected by a UCC-1 filing with the Minnesota Secretary of State.

TREATMENT

The pre-petition rights of the SBA under the terms of the EIDL loan agreements with the SBA shall continue and remain unaffected by the Chapter 11 filing. To the extent that any payments to the SBA on the EIDL were missed, they will be cured on the Effective Date unless otherwise agreed to by the SBA. Except as otherwise expressly provided by this Plan, all terms and conditions of the EIDL loan agreements and related documents and pre-petition UCC filings will remain in full force and effect.

    B.    Class 2: General Unsecured Claims (Impaired).

This class shall consist of allowed unsecured claims not entitled to priority and not treated in any other Class in the Plan. The allowed claims in Class 2 are estimated to be $166,023.76 including $33,000 owed to the state of Minnesota for an award for refund of an improvidently awarded grant from the state per the Judgment of the Minnesota Court of Appeals (In re the Matter of Early Years Academy, Inc. and the Commissioner of State of Minnesota Department of Human Services, Pine County Health and Human

Services Court File Number: 58-CV-24-157). The state may appeal the award of the Court of Appeals and seek the reinstatement of the earlier award by the Administrative Law Judge ($66,000). If the state appeals the award and the original award of $66,000 is reinstated on further appeal, the amount of the claims in Class 2 will be $200,000.

TREATMENT

The holder of a Class 2 Allowed Claim shall be paid the Pro Rata Share of all of the disposable income of the company's operations over a three year period in variable monthly payments, without interest. The plan presumes that income and costs will remain steady over the next three years. Based on these assumptions, per the projections in Exhibit A, payments to Class 2 claims shall begin in January of 2026 and continue thereafter in the sums listed per month with a total paid of $69,244.00 or the total Allowed Claims of class 2, whichever is less. The claim of the state of Minnesota is allowed in the current amount of $33,000 and, if the State appeals the award of the Court of Appeals and prevails in the appeal, the State will be allowed a claim in the amount of the final unappealable order in that proceeding (estimated to be $66,000).

A.  Class 2A: Unsecured Claims of NE Entrepreneur Fund and Choice Financial Group (Unimpaired).

Two unsecured claims entitled to a separate class are the claim of the Northeast Entrepreneur Fund and Choice Financial Group. Pre-Petition, those entities loaned money to AKA Holdings, LLC, an entity owned by Amy Miesner, the President of the Debtor. The loans funded the purchase of the building in Pine City, Minnesota where one of the locations of the Debtor's business is located. In connection with both loans, the Debtor executed an unsecured contingent guarantee of the debt of AKA Holdings. NE

Entrepreneur Fund has not participated in the case and has not filed a proof of claim. On October 24, 2024, Choice Financial Group filed an unsecured claim in the amount of $319,670.56 (Claim 8) based upon the unpaid amount left on the loan made to AKA Holdings and guaranteed by the Debtor.

TREATMENT

The Debtor believes that contingent unsecured guarantees are valued at $0.00 as of the time of the filing of the Chapter 11. Therefore, no Class 2A creditor shall share in the distribution of payments to Class 2 creditors. However, the claims of Class 2A creditors are allowed to the extent that the guarantees executed by the Debtor shall survive the confirmation of the plan.

B.     Class 3. Equity Holders (Unimpaired)

Debtor has one Security Holder, Amy Miesner.

TREATMENT

All of the rights of Amy Miesner shall not be affected by the bankruptcy, and those rights as provided for in the Articles and bylaws of the Debtor shall continue in full force.

ARTICLE VI. IMPAIRMENT OF CLASSES OF CLAIMS AND INTERESTS UNDER THE PLAN

Class 2 is impaired under the Plan. Class 1 and Class 2A are unimpaired.

ARTICLE VII. GENERAL PROVISIONS

A.     Payments under this Plan will be made monthly by check, mailed postage prepaid, to the Claimant at the address listed on its proof of claim or, if no proof of claim has been filed, to the address listed on the schedule.

B.     Except as to the Claims of Taxing Authorities, Debtor reserves the right to designate the application of any payment on a Claim under this Plan.

C.     In the event a payment is returned to Debtor unclaimed, with no indication of claimant's forwarding address, Debtor will hold such payment for a period of 60 days

from the date of return. If not claimed by claimant by the end of that period, the payment shall be paid pro rata to the other Class 2 claimants per the terms of this Plan. If all such Claims have been paid per the terms of the Plan, any returned claims become the property of Debtor. Notwithstanding the foregoing, Debtor shall have the right to keep any unclaimed returned plan payments of $100.00 or less without redistributing them to other Class 2 claimants.

      D.      Unless otherwise provided for in the Plan, Proofs of Claims or Interests not timely filed and not otherwise scheduled will not participate in distributions under this Plan and will be discharged under Bankruptcy Code § 1141(d) or § 1192 unless otherwise ordered by the Court.

      E.      Any creditor holding a deposit, including but not limited to utilities, shall return the full amount of the deposit, without the right to set off, as soon as practicable following consummation of this Plan. Notwithstanding the foregoing, any deposit held by a counterparty of the Debtor whose executory contract is assumed by the Debtor shall retain the deposit and the parties shall be returned to their state law remedies and contract provisions concerning those deposits.

      F.      As of the Confirmation Date, Debtor will continue to run their own affairs with current management, Amy Miesner in charge as sole owner, shareholder and director. Payments to creditors shall be made either by the Debtor or by the Subchapter V Trustee as set out below.

      G.      Any net funds or benefits received by Debtor by virtue of any adversary proceedings, lawsuit or any proceeding, claim, or any other legal right assertable by Debtor under the Bankruptcy Code, or other law, shall remain the property of Debtor, and will be used by Debtors to fund the Plan to the extent Allowed Claims are not otherwise paid in full. Debtor has not evaluated whether any such adversary actions have merit or would be beneficial based on a cost/benefit analysis.

      H.      If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan shall occur on the next succeeding Business Day.

      I.      Per 11 USC § 1191(c)(3)(ii) if payments are not made under the terms of the plan, upon 14 days' notice to the Debtor and the failure of the Debtor to cure the missed payment during that cure period, the Debtor may voluntarily liquidate the assets of the Debtor in a commercially reasonable manner or seek such relief as is allowed under the provisions of the Bankruptcy Code. For the avoidance of doubt, in the event of a default, nothing contained in this paragraph will limit or affect any remedies available to creditors under the Bankruptcy Code, including with respect to post-petition liabilities of Debtor.

## ARTICLE VIII. MEANS OF EXECUTION OF PLAN AND FEASIBILITY

Under the provisions of the Bankruptcy Code, a creditor having a lien or security interest in the assets of Debtor will have a secured claim only up to the value of the collateral securing the claim.

Per the schedules the assets of the Debtor at liquidation are approximately $115,000.00 plus an unpaid loan owed to the company by Amy Miesner in the amount of approximately $65,000 or a total of $180,000.00. Without a reorganization the unsecured creditors would receive nothing in liquidation based upon the properly perfected SBA loan of $500,000.00.

    A.    <u>Plan Implementation.</u>

If the Plan is confirmed as a consensual plan under 11 USC §1191(a), Debtor shall implement the Plan and pay creditors directly. In addition, unless otherwise ordered by the court, the trustee's duties terminate with the debtor's filing of the Notice of Substantial Consummation of the plan per 11 USC § 1183(c)(1).

Pursuant to 11 USC § 1190(2), if the Plan is confirmed under 11 USC § 1191(b), all of the future earnings will be submitted to the supervision and control of the Subchapter V trustee as necessary for the execution of the Plan. In that case, creditors shall be paid through Mary Sieling, c/o Manty & Associates, 150 S 5th St. St. 3125, Minneapolis MN 55402, or via email at Mary@mantylaw.com unless the trustee requests that they be relieved of that obligation. In addition, if the confirmation is confirmed pursuant to section 1191(b), the trustee will remain in place for the life of the plan, regardless of whether the trustee or the debtor make the plan payments. Upon completion of all plan payments, the subchapter V trustee must submit their final report and account of their administration of the estate in accordance with § 1183(b)(1), which incorporates § 704(a)(9). Debtor, after confirmation, will be referred to as the "Reorganized Debtor" and as such will continue to manage their affairs for the purpose of continuing its operations and paying non-plan creditors. The Reorganized Debtor will provide for or pay all of the Reorganized Debtor's expenses that would have been classified as administrative expenses prior to confirmation in the ordinary course of business. Debtor estimates that its unpaid administrative claims will be $35,000.00. Additional expenses will arise post-confirmation for professionals to carry out any litigation identified in the Plan (the appeal of the state's disputed claim is the only litigation currently on-going) or additional Avoidance Actions or other adversary litigation. However, because Debtor pays all vendors in advance, in their opinion there will be no recovery from any avoidance action.

Unsecured creditors will be paid in monthly payments as described above. If Debtor pursues any Avoidance Actions, any net proceeds of the Avoidance Actions will be paid separately to Class 2 creditors after the conclusion of all Avoidance Action Proceedings up to the amount of their Allowed Claim. Any questions concerning provisions of the Plan shall be directed to Debtor at amykmiesner@gmail.com . Payments will be made by check, mailed postage prepaid, to the Claimant at the address

listed on its proof of claim or, if no proof of claim has been filed, to the address listed on the schedules.

The Reorganized Debtor, after confirmation, will continue to manage their affairs under the terms of the articles and bylaws of EYA as modified by the terms of the Plan, and also subject to the supervision of the subchapter V trustee as provided herein.

The Reorganized Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2). The Reorganized Debtor will provide or pay all of the Reorganized Debtor's expenses and business debts arising post-confirmation in the ordinary course of business.

Although by definition Administrative Claims only accrue before the bankruptcy estate is terminated through the confirmation of the plan, to the extent required by the Court, post-confirmation fees or costs owed to professionals, including fees of the Subchapter V Trustee and any professionals working for the Reorganized Debtor shall be subject to approval by the Court pursuant to 11 U.S.C. § 503(b). Upon Court approval of any such post-confirmation administrative expenses, the Reorganized Debtor will pay such approved administrative expense in the ordinary course of business, unless otherwise agreed to by the particular claimant.

Debtor estimates that it will have no other expenses in that regard other than Subchapter V Trustee's fees and post-confirmation expenses for professionals to carry out the terms of the Plan including pursuing any Adversary claim and assisting the Reorganized Debtor in the other duties under the terms of the Plan.

B.    Feasibility

EYA's status in the community as a superior child care facility with new potential customers is very strong. It receives inquiries from new potential customers on a regular basis. Since EYA is only operating at half-capacity, there is substantial room for growth and EYA's management is confident that the trend of increasing enrollment will continue.

The pre-petition cutting of costs and the continual gradual increase of income coming out of Covid provide EYA with the confidence that it can meet its projections and pay their creditors the amounts provided for in the plan.

ARTICLE IX. EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND ADMINISTRATIVE CLAIMS

Debtor has two executory contracts, the lease with AKA Holdings, LLC for the Pine City facility and East Central Veterinarians for the Cambridge facility. As to each lease except as provided in the Plan, Debtor will assume the contracts and cure any arrearage on the Effective Date (Debtor is current on all rents).

## ARTICLE X. MODIFICATION OF THE PLAN

Debtor hereby reserves the right to amend or modify the Plan in the manner provided for under 11 U.S.C. § 1191 or § 1193, at any time prior to confirmation, or if allowed by the Court, at or after confirmation. Debtor reserves the right to amend the Plan or remedy any defect or omission, or reconcile any inconsistencies of the Plan, or the order of confirmation, in such manner as may be necessary to carry out the purpose and effect of the Plan or ensure confirmation.

## ARTICLE XI. CONTINUING JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction, to the extent allowed by law, over Debtor's property, this Case, and this Plan, after confirmation of the Plan, for the purpose of interpreting and enforcing the provisions of the Plan, including without limitation, the determination of the amount of Allowed Claims, the hearing of objections, if any, to Claims, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings, actions to subordinate Claims under § 510, to conduct any actions which may be properly removed to the Bankruptcy Court, and for other proper purposes related to this Plan. Further, nothing in the Plan or confirmation order will be deemed to expressly expand or diminish the jurisdiction of the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment under the Bankruptcy Code and 28 U.S.C. §§ 157 and 1334.

## ARTICLE XII. RESERVATION OF ALL RIGHTS, CLAIMS, ACTIONS

<u>General Reservation</u>. Debtor reserves all of its rights, at law or in equity, not otherwise specifically modified by this Plan, to object to claims, commence adversary proceedings or other legal actions, and take any other legal action allowed by the Bankruptcy Code or other applicable law, and use the Net Proceeds thereof to fund operations or this Plan.

## ARTICLE XIII. DISCHARGE, RELEASE, AND EFFECT OF CONFIRMATION

The provisions in the Bankruptcy Code for Subchapter V Chapter 11 cases shall govern the effect of confirmation of this Plan. If the Plan has confirmed under 11 USC 1191(a), confirmation of this Plan shall constitute a complete waiver and release and satisfaction of all Claims of all creditors and shareholders against Debtor, to the full extent allowed under bankruptcy law. This discharge and release shall include any purported liens, encumbrances, or security interests claimed by a claimant or any other entity against property of Debtor, or property dealt with by the Plan, except such liens as are expressly stated to survive confirmation. On the Effective Date, Debtor shall be restored to its full ownership and dominion over all property and assets owned by it, which property shall be properly dealt with by the Plan, pursuant to 11 USC § 1141(c).

If this plan is confirmed under the cramdown provision of 11 USC § 1191(b),

then Debtor will receive a discharge only as provided under 11 USC § 1141(d)(1)(A) after completion of all payments due within the term of the Plan. After that discharge is entered, the order discharging Debtor shall constitute a complete waiver and release and satisfaction of all Claims of all creditors and shareholders against Debtor to the full extent allowed under bankruptcy law. This discharge and release shall include any purported liens, encumbrances, or security interests claimed by a claimant or any other entity against property of Debtor, or property dealt with by the Plan, except such liens as are expressly stated to survive confirmation. On the Effective Date, Debtor shall be restored to its full ownership and dominion over all property and assets owned by it, which property shall be properly dealt with by the Plan, pursuant to Bankruptcy Code § 1141(c).

## ARTICLE XIV. BINDING EFFECT

The rights, duties and obligations of any person or entity named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person or entity. As to any Governmental Unit (as defined in § 101(27) of the Bankruptcy Code), nothing in the Plan or confirmation order shall limit or expand the scope of discharge, release, or injunction to which Debtor or reorganized debtor is entitled to under the Bankruptcy Code, if any. The discharge, release, and injunction provisions contained in the Plan and confirmation order are not intended and will not be construed to bar any Governmental Unit from, subsequent to the confirmation order, pursuing any police or regulatory action. Notwithstanding anything contained in the Plan or confirmation order to the contrary, nothing in the Plan or confirmation order shall discharge, release, impair, or otherwise preclude: (1) any liability to any Governmental Unit that is not a "claim" within the meaning of § 101(5) of the Code; (2) any claim of any Governmental Unit arising on or after the Confirmation Date; (3) any valid right of setoff or recoupment of any Governmental Unit against Debtor; or (4) any liability of Debtor or reorganized debtor under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, or operator of property that such entity owns, operates, or leases after the Confirmation Date. Nor will anything in this Plan or confirmation order: (i) enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding sentence; or (ii) divest any court, commission, or tribunal of jurisdiction to determine whether any liabilities asserted by any Governmental Unit are discharged or otherwise barred by the Plan, the confirmation order, or the Bankruptcy Code. Moreover, nothing in the Plan or confirmation order will release or exculpate any non-debtor, including any released parties or exculpated parties, from any liability to any Governmental Unit, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against any released parties or exculpated parties, nor shall anything in the Plan or confirmation order enjoin any Governmental Unit from bringing any claim, suit, action, or other proceeding against any non-debtor for any liability whatsoever; provided, however, that the foregoing sentence will not limit the

12

scope of discharge, if any, granted to Debtor under §§ 524 and 1141 of the Bankruptcy Code.

## ARTICLE XV. MISCELLANEOUS PROVISIONS

The headings of the articles, sections and subsections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

The rules of construction used in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan of Reorganization.

Except to the extent that the Bankruptcy Code or other Federal law is applicable, the rights, duties and obligations arising under this Plan of Reorganization shall be governed by, construed and enforced in accordance with the internal laws of the State of Minnesota.


Dated: _December 23, 2024_____  _____


EARLY YEARS ACADEMY, INC.

By:  /s/ *Amy K. Miesner*_____

Amy K. Miesner, its President

13

14

# EXHIBIT A

## **Projection**

4860-8431-3332, v. 3

Case 24-41601   Doc 62   Filed 12/23/24   Entered 12/23/24 10:17:15   Desc Main
Document      Page 19 of 19

# EARLY YEARS ACADEMY INC
## Cash Flow Forcast - Next 3 Years
## January 2025-December 2027

| | 2025 | 2026 | 2027 | Totals |
|---|---:|---:|---:|---:|
| Services | $ 948,480 | $ 948,480 | $ 948,480 | |
| **Other Income** | | | | |
| Grants | $ 60,000 | $ 60,000 | $ 60,000 | |
| **Total Income** | $ 1,008,480 | $ 1,008,480 | $ 1,008,480 | |
| | | | | |
| Food Costs | $ 40,170 | $ 40,170 | $ 40,170 | |
| Supplies | $ 9,888 | $ 9,888 | $ 9,888 | |
| Automobile Expenses | $ - | $ - | $ - | |
| QuickBooks Payments Fees | $ 13,101 | $ 13,101 | $ 13,101 | |
| Health Care - Nurse | $ 12,978 | $ 12,978 | $ 12,978 | |
| Insurance - Business | $ 11,334 | $ 11,334 | $ 11,334 | |
| Insurance - Life | $ - | $ - | $ - | |
| Insurance - Work Comp | $ 12,570 | $ 12,570 | $ 12,570 | |
| Marketing & Advertising | $ 3,944 | $ 3,944 | $ 3,944 | |
| Miscellanous Expenses | $ 2,000 | $ 2,000 | $ 2,000 | |
| Office Supplies & Expenses | $ 6,180 | $ 6,180 | $ 6,180 | |
| Total Payroll Expenses | $ 630,360 | $ 630,360 | $ 630,360 | |
| Professional Fees including Administrative Claims | $ 27,192 | $ 27,192 | $ 27,192 | |
| Rent or Lease of Buildings | $ 150,792 | $ 150,792 | $ 150,792 | |
| Repair & Maintenance | $ 5,180 | $ 5,180 | $ 5,180 | |
| Telephone | $ 3,090 | $ 3,090 | $ 3,090 | |
| Utilities | $ 15,079 | $ 15,079 | $ 15,079 | |
| **Total Ordinary Course Expenses** | $ 943,858 | $ 943,858 | $ 943,858 | |
| **Unpaid Administrative Expenses** | $ 35,000 | | | |
| **Grand Total Expenses** | $ 978,858 | $ 943,858 | $ 943,858 | |
| SBA EIDL Loan Payment | $ 30,000 | $ 30,000 | $ 30,000 | $ 90,000 |
| Unsecured Creditors | $ - | $ 34,622 | $ 34,622 | $ 69,244 |
| **Net Income** | $ (378) | $ - | $ - | |